J. T. Budd, Jr. v. Commissioner.Budd v. CommissionerDocket No. 32759.United States Tax Court1954 Tax Ct. Memo LEXIS 315; 13 T.C.M. (CCH) 77; T.C.M. (RIA) 54037; January 29, 1954*315 James A. Taylor, Esq., Harvey Building, West Palm Beach, Fla., for the petitioner. James R. Harper, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's individual income taxes in the years and amounts as follows: YearDeficiency1944$33,993.11194529,937.3719466,483.08194728,049.48The sole issue presented is whether for the taxable years involved the respondent erred in determining that all of the income from the partnership business conducted under the name of J. T. Budd, Jr. & Company was taxable to petitioner. Part of the facts are stipulated and are found accordingly. Findings of Fact Petitioner, J. T. Budd, Jr., is an individual residing in Quincy, Florida. His returns for the respective taxable years were filed with the collector of internal revenue at Jacksonville, Florida. On July 31, 1937, petitioner became the owner of all the outstanding capital stock of the Higdon Cigar Company, consisting of 100 shares of $100 par value per share. The corporation, which engages in the manufacture and sale of cigars, was organized as a Florida corporation*316 on October 2, 1933, and since that time petitioner has served as its president. 1Upon acquisition of the corporation stock on July 31, 1937, petitioner made a gift of 45 shares thereof to his wife, Florence W. Budd, and reported it in a gift tax return, attributing the value of $31,110 to the stock. Stock certificates were issued in the name of petitioner's wife and delivered to her. There were no restrictions upon her right to sell, pledge, or dispose of the stock by gift or will. Petitioner at no time held power of attorney or other authority from his wife with respect to any stock adhering in ownership of the stock. From 1937 until the end of 1943, petitioner individually engaged in the business of buying and processing tobacco products. Prior to August 26, 1941, petitioner's individual operations were financed through relatively small personal loans from the Quincy State Bank, Quincy, Florida. Petitioner was not required to post collateral on these loans, nor were assets of his wife used for such purposes. During the period*317 August 26, 1941, to December 31, 1943, petitioner made personal loans from the Florida National Bank of Jacksonville, Florida, for use in his individual business. The loans were secured by the pledge with the bank of four insurance policies on the life of petitioner in the aggregate amount of $25,000, chattel mortgage deeds, and all of the capital stock of the corporation, except one qualifying share, which, prior to April 20, 1943, consisted of the 54 shares issued to petitioner and the 45 shares issued to his wife on July 31, 1937. Petitioner had his wife's permission to pledge her shares which had a book value on August 26, 1941, of $59,225.13. On April 20, 1943, the corporation declared and distributed a fourteen-to-one stock dividend. Petitioner received 770 shares and his wife received 630 shares so that their respective holdings were increased to 824 shares and 675 shares. At no time were the 630 shares issued to petitioner's wife ever pledged against petitioner's individual loans. On December 31, 1943, petitioner and his wife, Florence W. Budd, entered into a written agreement, effective January 1, 1944, to conduct as a partnership, J. T. Budd, Jr. & Company, the business*318 previously carried on by petitioner as an individual. The agreement provided in pertinent part: "One: Each partner shall contribute in money, or its equivalent in property, the sum of Fifteen Thousand ($15,000.00) dollars, to be used as capital for conducting and carrying on the business of the partnership. "Two: The business of the partnership shall be the purchase, processing, packing, assorting, selecting and selling of tobacco; the packing, processing and/or selling of tobacco for others for compensation; the buying, selling and dealing in materials, merchandise and supplies and the transaction of such other lawful business as may, from time to time, be mutually agreeable to the partners. "Three: Each partner shall devote so much of his or her time to the affairs of the partnership as may, from time to time, be necessary or expedient for the proper management of the business of the partnership, and should either partner contribute materially more in service to the partnership than the other, such partner shall be given reasonable compensation for such services before a division of profits. "Four: The profits and losses of the partnership shall be borne by the partners in*319 equal proportions. "This PARTNERSHIP AGREEMENT shall take effect and be operative upon and after January 1, 1944." The initial contribution to the partnership as of January 1, 1944, consisted of the book value of the net assets of the individual enterprise conducted by petitioner prior to that date, in the total amount of $42,775.04, and the sum of $15,000 cash contributed by petitioner's wife. The latter amount represented the proceeds of a loan to petitioner's wife on December 28, 1943, from the Florida National Bank. The loan was secured by a demand note, bearing 4 per cent annual interest, and the pledge of the 630 shares of Higdon Cigar Company issued to petitioner's wife. This loan was later paid in full on May 16, 1944, with the proceeds of unsecured loans to Florence W. Budd from her parents, which were never repaid. Petitioner's wife, Florence W. Budd, performed no services for the partnership and did not participate in the management thereof. All details of the business were conducted under petitioner's management and direction. Capital and credit facilities were major factors in the conduct and business operations of J. T. Budd, Jr. & Company. On June 16, 1944, following*320 preliminary negotiations between the partnership and the Florida National Bank, a seasonal line of credit was established up to the total sum of $125,000. Under the terms of the credit agreement loans were to be payable on demand and the entire outstanding capital stock of the corporation was to be pledged with the bank as a condition precedent to the establishment of the line of credit. On June 16, 1944, all of the outstanding stock of Higdon Cigar Company, except one qualifying share, representing 1,499 shares, was pledged with the bank against the partnership's credit. On that date petitioner owned 824 shares and his wife owned 675 shares. The estimated approximate book value of the 1,499 shares was $200,000, and the estimated book value of the 675 shares owned by Florence W. Budd was $90,000. On February 6, 1945, and during the pendency of the line of credit established on June 16, 1944, 2,000 shares of the corporation's stock were issued to the partnership in part settlement of a debt of the corporation to the partnership. Under the terms of their partnership agreement, petitioner's wife held a one-half interest in these shares. The 2,000 shares, in addition to the 1,499 shares, *321 were also pledged with the bank on February 16, 1945, in compliance with the condition that all of the corporation's stock be pledged with the bank in consideration of the credit established for the partnership. On June 1, 1945, the partnership borrowed from the Barnett National Bank of Jacksonville, Florida, $150,000, which was used to purchase 1,500 shares of stock of the corporation. The following represents the loans and dates of final payment under the terms of the credit established for the partnership on June 16, 1944: Date ofDate of loanAmountfinal payment8-10-44$25,0009- 9-441- 1-4550,0005-16-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,0005-28-45On May 24, 1945, the partnership established a new line of credit with the Barnett National Bank. The loans made under this arrangement were as follows: Date ofDate of loanAmountfinal payment6- 1-45$150,0008- 6-477-30-45100,0006-11-478- 1-4630,0008- 6-478- 9-4675,00010- 8-468-19-46100,00011-14-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,00011-23-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,0008- 6-47The loan made on June 1, 1945, in the amount of $150,000 was secured by the pledge of the bank of the entire*322 outstanding stock of the corporation, except one qualifying share, which consisted of 824 shares owned by petitioner, 675 shares owned by petitioner's wife, and 3,500 shares owned by the partnership in which petitioner and his wife each held an equal interest. These shares all remained pledged with the bank until repayment of the loan on August 6, 1947. On August 6, 1947, the corporation, which had changed its name from Higdon Cigar Company to Budd Cigar Company, Inc., established a line of credit with the Barnett National Bank up to the amount of $1,500,000. The agreement provided that all loans made to the corporation would be individually guaranteed by petitioner and his wife by separate guaranty agreements, as owners of all of the capital stock of the corporation and as copartners doing business under the name of J. T. Budd, Jr. & Company. In addition, petitioner and his wife each pledged as collateral security for the performance of their guaranties certain securities and bonds which each had individually acquired. In the guaranty agreements executed by petitioner and his wife, it was contemplated that the corporation would loan and advance funds to the partnership to be used*323 by it in business operations and that loans by the Barnett National Bank to the corporation would directly benefit both petitioner and his wife, individually, and as copartners in J. T. Budd, Jr. & Company. The loans by the Barnett National Bank to the corporation under the terms of credit agreements of August 6, 1947, were as follows: AmountDate ofDate of loanof loanfinal payment8- 7-47$355,0008-20-48 18- 7-47100,00010-23-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,0003-10-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,0004-26-488-29-47100,0008- 3-489- 4-47100,0008- 3-489-10-47100,0008-20-48 2During the months of August and September 1947, the corporation advanced the sums of $554,441.67 and $244,000, respectively, to the partnership from the loans made with the Barnett National Bank under the August 6, 1947, credit agreements. Separate accounts were maintained in the partnership books for petitioner and his wife. Profit distributions were credited to their respective capital accounts and their withdrawals were*324 recorded in their separate personal accounts. All federal income taxes of both petitioner and his wife were paid from partnership funds and then charged to the appropriate party's individual account. In each taxable year the petitioner's distributive share exceeded that of his wife by the amount of $1,200, representing the annual sum withdrawn from partnership funds as petitioner's salary. Net total credits and charges for petitioner and his wife were as follows: DebitDistributiveAmounts withdrawnbalance inCapitalshares ofFlorenceJ. T. Budd, Jr.Yearaccountsearnings 1W. BuddJ. T. Budd, Jr.account 12-311944$52,013.10$40,685.95$ 3,672.85$21,551.73194536,605.2336,605.2328,620.1048,132.36$10,564.32194662,837.8911,407.8312,295.4629,906.9828,175.84194797,609.6837,025.101,293.6928,199.6825,330.89At the close of the taxable year 1944 the balances in the two capital accounts were equalized at the amount of $52,013.10, by crediting petitioner's personal partnership account with $9,896.16, which represented the difference*325 between the excess of petitioner's initial contribution over the initial contribution of his wife in the amount of $27,775.04, and the excess of petitioner's withdrawals over the withdrawals of his wife in the total amount of $17,878.88. On February 11, 1947, an account entitled "J. T. Budd, Jr. Building Account" was opened in the partnership books for purposes of maintaining repair cost records. The building to which the account referred was acquired by petitioner in 1928 and 1937 and was used for handling and processing tobacco. Approximately 75 per cent of the building and its facilities was used by the corporation and the remaining part by the partnership. The corporation paid a monthly rental of $300 and the partnership used the building without charge. During the taxable year 1947 an amount of $16,791.42 was debited to the "J. T. Budd, Jr. Building Account' through a corresponding credit to petitioner's personal account in the partnership books to rectify a previous erroneous charge to petitioner's personal account. During the taxable years involved petitioner, in good faith and acting with a business purpose, intended to join together with his wife, Florence W. Budd, in*326 the present conduct of the business carried on under the name of J. T. Budd, Jr. & Company, in the purchasing, processing, and selling of tobacco. Opinion LEMIRE, Judge: The sole question presented is whether the respondent erred in determining for the taxable years 1944 to 1947, inclusive, that no valid bona fide partnership for tax purposes existed between petitioner and his wife, Florence W. Budd, doing business as J. T. Budd, Jr. & Company. In support of his determination respondent contends that petitioner's wife performed no services for the partnership; that she did not make a bona fide contribution of significant capital; that petitioner did not receive a reasonable salary for his services; and that petitioner exercised dominion over his wife's distributive shares of partnership earnings. The basic test for determining the validity of a partnership between members of a family group is whether or not the individuals, acting in good faith and with a business purpose, actually intended to join together as partners in the present conduct of the enterprise. The issue is factual and is to be determined from all of the facts and circumstances of record. Commissioner v. Culbertson, 337 U.S. 733.*327 The reality of the status of petitioner's wife as a partner is not necessarily precluded by virtue of the fact that she neither rendered services to the partnership nor participated in its management. This is particularly true where, as here, capital and credit facilities are important factors in the production of income. Commissioner v. Culbertson, supra. In the written partnership agreement of December 31, 1943, it was provided that each partner should contribute in money, or its equivalent in property, the sum of $15,000 to be used as original capital. Petitioner's wife met this requirement by contributing $15,000 in cash which she received as a gift from her parents. As to this there is no dispute. However, respondent does question the circumstances surrounding the contribution of shares of corporate stock held by petitioner's wife in her name and used by the partnership as collateral against lines of credit extended to the partnership from time to time during the taxable years involved. The record shows that on July 31, 1937, petitioner made a gift to his wife, Florence W. Budd, of 45 shares, or 45 per cent, of the outstanding shares of Higdon Cigar Company. *328 On April 20, 1943, petitioner's wife received an additional 630 shares as a stock dividend. Respondent concedes that due to competitive conditions in the tobacco industry in late 1943 it was necessary for petitioner, operating individually, to make substantial bank loans for which petitioner's personal capital and credit were inadequate as collateral. Respondent further concedes that the additional capital and credit needs were provided through the formation of a partnership between petitioner and his wife, effective January 1, 1944. The record shows that thereafter from time to time during the taxable years 1944 to 1947, inclusive, loans were made to the partnership by banks which would not have been made without the additional security provided by the personal pledge of the assets held by petitioner's wife, consisting principally of her shares in the corporation, and the shares owned by the partnership in which she held an equal interest. It is to be noted that neither the 45 shares received as a gift some six and one-half years prior to the formation of the partnership, nor the stock dividend of 630 shares issued thereon in April 1943, were directly contributed to the partnership*329 by petitioner's wife. The stock at all times remained in her name, and she was entitled to exercise all rights of ownership not inconsistent with the pledge made for partnership loans wherein her shares were subject to forfeiture in whole or in part to satisfy the indebtedness. Petitioner did not have a power of attorney or any authority to exercise control or dominion over the shares held by his wife. Accordingly, in our view petitioner's wife at all times possessed sufficient unfettered control over the assets which she made available for credit purposes of the partnership business in which capital and credit facilities were major factors in the production of income. The contributions of petitioner's wife were hers in reality and not in name only, as contended by respondent. See John A. Morris, 13 T.C. 1020 (Acq. 1950-1 C.B. 3); Joseph Middlebrook, Jr., 13 T.C. 385 (Acq. 1950-1 C.B. 3). Respondent contends that the real control and enjoyment of the partnership profits were held by petitioner alone. In support of this contention respondent points to the fact that throughout the taxable years involved petitioner's withdrawals*330 from the partnership exceeded those of his wife, and, in the years 1945 and 1946, exceeded his respective distributive shares. Moreover, respondent argues, the withdrawals of petitioner's wife were uniformly less than her distributive share of profits and such amounts as were withdrawn were used by her toward payment of taxes. While petitioner's wife did not individually withdraw all of her distributive portion of the partnership income during the taxable years involved, she had the right to do so. The amounts not withdrawn were reflected in her capital, or drawing account. Likewise, the excess withdrawals of petitioner were reflected as debit balances in his accounts. Although the existence of unequal withdrawals is to be considered with all of the other facts and circumstances in determining the bona fide character of a partnership, it is not controlling. Respondent raises a question concerning the $1,200 withdrawn annually by petitioner as compensation for his services to the partnership. We are unable to agree, however, with respondent that a mere comparison of the partnership profits with the annual salary is convincing proof of lack of good faith in carrying out the terms of*331 the partnership agreement. Upon giving due consideration to all of the facts and circumstances presented by this record, including the partnership agreement, the conduct of the parties in respect thereto, their capital contributions, and the business purpose for which the partnership was formed and operated, we are convinced that the petitioner and his wife, Florence W. Budd, in good faith intended to and did join together in the operation of the partnership business under the name of J. T. Budd, Jr. & Company in all of the taxable years involved. We hold that respondent erred in determining that all of the income from the partnership business conducted under the name of J. T. Budd, Jr. & Company was taxable to petitioner. Decision will be entered for the petitioner. Footnotes1. On January 1, 1946, Higdon Cigar Company changed its corporate name to Budd Cigar Company, Inc., and is referred to herein as the corporation.↩1. Paid with new note dated August 20, 1948. ↩2. Cash payment of $55,000 on February 17, 1948. Balance of $45,000 paid with new note dated August 20, 1948.↩1. Exclusive of petitioner's salary of $1,200.↩